[Civ. No. 549.   Third Appellate District.—March 9, 1909.]

STOCKTON LUMBER COMPANY, Respondent, v. CALIFORNIA NAVIGATION AND IMPROVEMENT COMPANY, Appellant.

COMMON CARRIER—LIABILITY FOR LOSS OF LUMBER—STORM NOT IRRESISTIBLE—NEGLIGENCE—BARGE UNANCHORED—ABSENCE OF WATCHMAN—NEW TRIAL.—In an action against a common carrier for the loss of lumber agreed to be loaded from a schooner and transported on a barge, the drifting of which caused the loss, and the verdict was for the defendant on the ground that a storm irresistibly caused the loss, a new trial was properly granted on the ground that the verdict was against law, there being no proof that the storm was of unusual character or violence, or that no vigilance or caution or good seamanship could have averted the loss, and there being evidence of negligence in failing to anchor the barge, having the means of anchoring the same, and in failing to keep a watchman upon the barge.

ID.—IMPROPER EVIDENCE WARRANTING NEW TRIAL—USAGE IN BAY OF SAN FRANCISCO.—It was error also warranting a new trial for the court to admit, over the objection of the plaintiff, evidence of a usage in the bay of San Francisco to lash barges from discharging vessels, and to leave the barge without a watchman, for the purpose of relieving itself from implied negligence in those regards, under the contract with plaintiff.

ID.—ADMISSIBILITY OF USAGE—INTERPRETATION OF AMBIGUOUS CONTRACT—UNAMBIGUOUS CONTRACT NOT TO BE VARIED.—Usage is only admissible as an aid to the interpretation of an ambiguous or uncertain contract; and it is never admissible to vary the terms of a clear and unambiguous contract of carriage.

ID.—ERROR IN INSTRUCTIONS—NEGLIGENCE OF CREW OF SCHOONER—DEFENDANT NOT RELIEVED FROM LIABILITY.—It was not proper to give instructions attaching undue importance to the negligence of the crew of the schooner tending to lead the jury to believe that defendant would thereby be relieved from loss.   The law holds the

carrier responsible for all loss and damage of the property intrusted to his care, whether it arises from his own negligence or that of his servants, or of third persons, or by the tortious act of himself or of others not public enemies.

ID.—LOSS OF LUMBER AFTER DELIVERY—FACTS NOT EXCUSING—LIABILITY.—When the whole of the loss occurred after the lumber had been delivered to the defendant on its barge, nothing after such delivery, not attributable to the plaintiff, could relieve the defendant from liability, except upon the happening of one or more of the causes specified in section 2194 of the Civil Code, which does not include the negligence of some third party acting conjointly with the defendant in respect of the care of the property, nor the mistaken act of the crew of the schooner in an honest effort to save the barge which had been left for the night without a watchman.

APPEAL from an order of the Superior Court of the City and County of San Francisco.   John Hunt, Judge.

The facts are stated in the opinion of the court.

Arthur L. Levinsky, for Appellant.

H. O. Beatty, and Alexander R. Baldwin, for Respondent.

CHIPMAN, P. J.—This is an appeal by defendant from an order granting plaintiff's motion for a new trial.

The action was to recover the value of certain lumber received by defendant to be transported by defendant's barge, under tow by steamer, from the bay of San Francisco to the city of Stockton. The lumber was in the schooner "Georgina," lying off the shore of the bay. Defendant moored its barge "Era" alongside of the schooner and defendant had received on board the "Era" about two hundred thousand feet of lumber when the barge parted from the schooner, and a loss of one hundred and thirty-eight thousand feet, valued at $2,723.26, resulted, and hence this action.

That defendant was a common carrier, and as such had agreed to carry the lumber from the schooner "Georgina" to its point of destination, appears without conflict, and nothing in the agreement appeared which changed its liability as a common carrier as defined by section 2194 of the Civil Code. The agreement was oral by which defendant agreed to deliver

the lumber at Stockton for a stated compensation, but no bill of lading was issued. The considerations which moved the learned trial judge to grant the new trial are clearly stated by himself, and we quote from his written opinion found in respondent's brief. A very satisfactory conception of the points in the case will also thus appear:

"The case was tried before a jury, and a verdict was rendered for defendant. The plaintiff now moves for a new trial, and I think its motion should be granted upon the ground that the verdict is against law.

"The defendant, as a common carrier, had undertaken to carry and deliver the lumber of the plaintiff to its point of destination. Under the provisions of the Civil Code the defendant, as such carrier, could only excuse the performance of this undertaking by proof that the loss in question resulted from an inherent defect in the article shipped, or by the act of a public enemy of the United States, or of the state, or an act of the law, or from any irresistible or superhuman cause.

"The defendant's answer in substance pleads, first, that the barge which had been attached to the schooner had been cut adrift; second, that the southeasterly wind came up and caused the barge to part from its moorings and drift; and, third, that, without fault of defendants, but in consequence of the fault of the crew of the 'Georgina,' the lumber in question was lost. In my opinion, the point upon which this case must turn is the defense of 'irresistible or superhuman cause.'

"It will be observed that plaintiff, under his contract with defendant, had nothing to do either with the acts of the crew of the barge or schooner, or with the manner in which the barge might be secured to the schooner, or the way in which the lumber should be taken from one to the other, or the manner in which the defendant herein should discharge its duty as a common carrier.

"The defendant undertook to take lumber from the schooner and place it upon the barge, and to convey it to the point of destination; and failing to do so, it results that, unless the failure is excused by one of the above excepted causes, the carrier is liable.

"Upon the trial of the case I admitted evidence concerning the manner in which the barge had been moored to the

schooner, and evidence relating to the tackle and apparel of each, and also in respect to what occurred on the night in question when the barge went adrift. This testimony, otherwise irrelevant, was only admitted for the purpose of ascertaining how far and to what extent defendant's failure was or might be attributed to an irresistible or superhuman cause.

"So far as the storm upon which the defendant relies is concerned, it appears that it was not of an unusual character, or of abnormal violence. Indeed, there is no testimony tending to show how far, or to what extent, the action of the wind actually could or would have caused the vessels to part. The only witness who testified upon that subject was the captain, who was ashore at the time, and he testified to the effect that his barometer fell, and that the windstorm was violent in the vicinity of his residence in this city. No testimony was offered to show the effect of the windstorm upon the bay, or at a point where the vessels were moored, on the night in question. There was no sudden and unlooked-for physical event against which no prudence could prevail; and, so far as the storm may have affected the waters of the bay, or the security of the moorings, it only appears, from the witness Bloomfield, that, on the following morning, about 5 o'clock, 'it was blowing hard and the bay was choppy.'

"Thus there is an entire failure of evidence to show that no amount of vigilance, or caution, or good seamanship, on the part of the crew of the schooner, or of the owners of the barge, could have averted the result.

"Furthermore, there is evidence of neglect, at least upon the part of the owners and crew of the barge. The barge was not anchored, although it had an anchor and chain seemingly good and efficient; and if the anchor had been dropped, the barge would not have drifted even after the lines had parted.

"Whether, therefore, the bow line, or lines which attached the barge to the schooner, were out, or whether they parted in the stress of the storm, in any event, there is evidence of neglect and omission at least upon the part of the owners of the barge in failing to place a watchman on board of her.

"Defendant, as a common carrier, in performing its contract, was not excused by any of these causes which exempt a common carrier from liability.

"For these reasons, I am of opinion that a new trial herein should be granted, and it is so ordered.

"J. HUNT,

"Judge.

"April 9, 1908."

As the case must go back for a new trial, it may be proper to notice one or two errors assigned by respondent, which, it is claimed, should call for a new trial.

Over plaintiff's objection, evidence was admitted as to a custom or usage existing at the bay of San Francisco in regard to the lashing of barges to discharging vessels and in regard to leaving barges while receiving cargo from such vessels without a watchman on board. This evidence was offered to relieve defendant from implied negligence for failure in these regards. Evidence may be given of the following facts: "Usage, to explain the true character of an act, contract or instrument, where such true character is not otherwise plain; but usage is never admissible, except as an instrument of interpretation." (Code Civ. Proc., sec. 1870, subd. 12.) In *Burns* v. *Sennett*, 99 Cal. 363, [33 Pac. 916], it was held that "usage cannot be given in evidence to relieve a party from his express stipulation, or to vary a contract certain in its terms." (See cases to the point cited in *Leonhart* v. *California Wine Assn.*, 4 Cal. App. 19, [89 Pac. 847] ; *Ames* v. *Southern Pacific Co.*, 141 Cal. 728, [99 Am. St. Rep. 98, 75 Pac. 310] ; *Hale Bros.* v. *Milliken,* 5 Cal. App. 344, [90 Pac. 365].) As shown in the opinion of the trial judge, plaintiff, under the contract, had nothing to do either with the acts of the crew of the barge or schooner or with the manner in which the barge might be secured to the schooner, or the way in which lumber should be taken from one to the other, or the manner in which the defendant herein should discharge its duty as a common carrier. Such being the contract, the usage allowed to be proven was immaterial and might have been prejudicial. The contract was simple, express in its stipulations and certain in its terms.

There were certain instructions given to which plaintiff objected, which seem not to be consistent with the view of the case expressed by the trial judge in the opinion filed by him. These instructions apparently attached undue significance to the conduct of the "Georgina's" crew as a contributing cause

of the damage to plaintiff. The jury might have been led to believe that if the crew of the "Georgina" contributed to the loss, it would relieve the defendant. But the law is: "As between the carriers and the owners of goods, the negligence or misconduct of a third party will not excuse the former since a remedy lies over against the party so offending." (*Mershon* v. *Hobensack,* 22 N. J. L. 372, 381.) It was said in *Howe* v. *Oswego etc. Ry. Co.,* 56 Barb. 121, 124: "The law holds the carrier responsible to the owner for all loss and damage of the property, intrusted to his care, whether it arise from his own negligence or that of his servants, or of third persons; or whether it be caused by the tortious acts of himself or of others, who are not public enemies; or whether it be by unavoidable accident, not caused by the act of God."

The loss occurred after the lumber had been delivered to defendant on its barge. Nothing after delivery, not attributable to plaintiff, could relieve defendant of its liability except the happening of one or more of the causes specified in section 2194 of the Civil Code, and the negligence of some third party acting conjointly with defendant, in caring for the property, is not among these causes; even the larceny of the lumber would not relieve defendant (*Schieffelin* v. *Harvey,* 6 Johns. (N. Y.) 170, [5 Am. Dec. 206]); nor would its utter destruction by the elements, unless by "some irresistible superhuman cause." Much less would the act of the crew of the "Georgina" in an honest though mistaken effort to save the barge which had been left by the defendant for the night without a watchman.

The order is affirmed.

Hart, J., and Burnett, J., concurred.